DAMM, APPELLANT, v. DAMM, RESPONDENT.

(No. 6,286.)

(Submitted April 2, 1928. Decided April 6, 1928.)

[266 Pac. 410.]

*Divorce—Desertion—What Constitutes—Custody of Minors—Discretion—Evidence—Depositions—Decree—Support of Divorced Wife not Authorized Under Statutes.*

Divorce—Depositions Used in Former Action—When Admissible.

1. In a divorce proceeding commenced by the wife in which defendant under his cross-complaint asked, inter alia, for the custody of their minor child, depositions used as evidence by defendant in a former action brought by him, resulting in a denial of the divorce, reflecting upon the fitness of the wife to have custody of the child, were properly admitted in the second action, the parties having been identical in both suits and it appearing that the wife had opportunity to, and did, cross-examine the deponents.

Evidence—Depositions Used in Former Trial—Admissibility Dependent on What.

2. The admissibility of depositions used upon a former trial is not so much dependent upon exact identity of parties and causes of action as it is upon the identity of the question being investigated and the opportunity of the party against whom it is offered to cross-examine.

Divorce—Refusal of Wife to Come to Home Provided by Husband Constitutes Desertion, When.

3. Where the husband having a home in this state removed temporarily to a city in another state and on returning to his home in Montana with intention of remaining there, requested the wife to accompany him but met with the declaration that she would never again go there, such refusal constituted desertion on her part, in the absence of proof that the home was not a fit place in which to live or that her refusal to return was the result of his inability to pay for her transportation.

Same—Desertion by Wife—Curable by Bona Fide Offer to Return.

4. Where the wife deserts the husband under circumstances referred to above (par. 3), to cure the desertion it was incumbent upon her, under section 5744, Revised Codes 1921, to attempt to effect a reconciliation and make an offer, in good faith, to return.

---

2. Admissibility of evidence given in other action or proceeding, see note in 91 Am. St. Rep. 198. See, also, 10 Cal. Jur. 1128; 10 R. C. L. 971.

3. Refusal to follow husband's change of domicile as desertion, see notes in 119 Am. St. Rep. 637; 138 Am. St. Rep. 160; 5 Ann. Cas. 852; 4 L. R. A. (n. s.) 145. See, also, 9 Cal. Jur. 676; 9 R. C. L. 365.

4. Duty to seek reconciliation, see notes in 119 Am. St. Rep. 623; 138 Am. St. Rep. 153; 39 L. R. A. (n. s.) 1119. See, also, 9 Cal. Jur. 672; 9 R. C. L. 371.

[82 Mont. 239.]

Same—Custody of Minors—Paramount Consideration—Discretion.

5. In determining the question as to which one of the parties to a divorce action shall have custody of the minor children, the welfare of the latter is a matter of paramount consideration which must of necessity be left largely in the sound discretion of the trial court, and its award in that respect will not be disturbed on appeal except on a showing of manifest abuse of that discretion.

Same—Custody of Minors—Evidence—Sufficiency to Uphold Judgment of Court Awarding Custody to Husband.

6. Evidence tending to show that while the parties were living in a city in Oregon, long before defendant husband returned to his ranch in this state, the wife had deserted the family residence and abandoned a minor child, renting a place for the ostensible purpose of running a dressmaking establishment which was later raided by prohibition officers who found a large amount of "home-brew," etc., she pleading guilty of illegal possession thereof, and showing other damaging facts, *held* sufficient to demonstrate that the court in awarding custody of the child to the husband did not abuse its discretion in the premises.

Same—Wife not Entitled to Support Where Husband Decreed Divorce for Offense of Wife.

7. In the absence of legislation permitting it, the district court is without authority to compel a husband to whom a divorce has been granted for an offense of the wife to make provision for her support.

Same—Wife Deserting Husband not Entitled to Support.

8. A husband is not required to support his wife while she lives separate and apart from him against his will and without his consent and refuses to follow him to his chosen place of residence.

[1]    Divorce, 19 **C. J.**, sec. 801, p. 346, n. 50.
[2]    Depositions, 18 **C. J.**, sec. 378, p. 751, n. 25.
[3, 4]   Divorce, 19 **C. J.**, secs. 113, 114, p. 60, n. 80; sec. 122, p. 66, n. 47; sec. 479, p. 193, n. 32.
[5]    Divorce, 19 **C. J.**, sec. 795, p. 343, n. 10; sec. 803, p. 347, n. 65; sec. 823, p. 361, n. 36.
[7]    Divorce, 19 **C. J.**, sec. 568, p. 244, n. 81.
[8]    Husband and Wife, 30 **C. J.**, sec. 32, p. 519, n. 3.

*Appeal from District Court, Custer County, in the Six-teenth Judicial District; Frank P. Leiper, Judge of the Seventh District, presiding.*

DIVORCE proceedings by Goldie E. Damm against John Damm, Jr., in which defendant filed a cross-complaint for divorce. Judgment for defendant. Affirmed.

5. See 9 Cal. Jur. 790; 9 R. C. L. 475.

7. Right of wife to alimony where divorce is granted against her, see notes in 20 Ann. Cas. 24; Ann. Cas. 1915C, 1254; 20 L. R. A. (n. s.) 42; 30 L. R. A. (n. s.) 1034. See, also, 1 Cal. Jur. 1022; 1 R. C. L. 936. Fault of party as affecting right to alimony under statute making separation a substantive ground of divorce, see note in 51 A. L. R. 967.

*Mr. George W. Farr,* for Appellant, submitted a brief and argued the cause orally.

Inadmissibility of depositions: We submit that under sections 10531 and 10654, Revised Codes 1921, the depositions were not admissible.

While they were taken in a former action between the same parties, that former action did not relate to this same subject matter in the sense contemplated by the statute. This action is entirely different, separate and distinct from the one in which the depositions were taken. Neither party to this action could recover a decree of divorce from the other upon any ground presented in the other action. The situation with respect to the rights to the custody of the minor child is vastly different in the instant case than it was in that one. The question in this case is whether, under the facts and circumstances of this particular case, she was at the time of this trial a fit and proper person to have the control and custody of the minor child. (See *Mette & Kanne Dist. Co.* v. *Lowery,* 39 Mont. 124, 101 Pac. 966; *O'Meara* v. *McDermott,* 40 Mont. 38, 104 Pac. 1049; *Reynolds* v. *Fitzpatrick,* 28 Mont. 170, 72 Pac. 510; *In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004; *Leggat* v. *Carroll,* 30 Mont. 384, 76 Pac. 805; *Anaconda Copper Min. Co.* v. *Heinze,* 27 Mont. 161, 69 Pac. 909.)

Desertion is not to be inferred from the mere fact that husband and wife do not live together. (*Freeman* v. *Freeman,* 82 N. J. Eq. 360, 49 L. R. A. (n. s.) 1042, 88 Atl. 1071; *Reynolds* v. *Reynolds,* 68 W. Va. 15, Ann. Cas. 1912A, 889, 69 S. E. 381.) The burden of proof was upon the defendant, not only because of the allegations in his cross-complaint, but also because he is the one who left the domicile. To make out his case, he should have proven not only that he came to Montana without the intention of returning to Portland, and with the purpose of taking up his domicile in Mon-

tana; but he should also have proven that he requested the plaintiff to come to Montana with him; and lastly, he must prove that he offered to pay her expenses in so doing. It is not sufficient for him to merely say that he talked it over with the plaintiff and she said she was not going to come. How could she come if she did not have the money? There is not a word in evidence that he offered to pay her fare here, or that he wrote her to come here and offered to send her the money, after he got to Montana and established a domicile here. (19 C. J., sec. 112, p. 59; *Roby* v. *Roby,* 10 Idaho, 139, 77 Pac. 213; *Turner* v. *Turner,* 26 Ind. App. 677, 60 N. E. 718; *Martin* v. *Martin,* 133 La. 948, 63 South. 477; *Buys* v. *Buys,* 56 Pa. Super. Ct. 338; *Collett* v. *Collett,* 170 Mo. App. 590, 157 S. W. 90.)

*Mr. Daniel L. O'Hern,* for Respondent, submitted a brief and argued the cause orally.

The depositions were properly admitted. "Depositions taken in a former suit are usually admissible in a subsequent suit between the same parties involving the same question or subject matter. The admissibility of such depositions is not, however, dependent upon exact identity of parties and causes of action, but rather upon identity of the question being investigated, and upon the opportunity of the party against whom the deposition is offered to cross-examine. The admission of depositions is a matter somewhat within the discretion of the court, and one which will not be reviewed unless there has been a palpable abuse of the discretion as exercised." (18 C. J. 750.) This authority cites the Montana case of *In re Colbert's Estate,* 51 Mont. 455, 153 Pac. 1022, as supporting the text. This case follows the same rule as in the case of *O'Meara* v. *McDermott,* 40 Mont. 38, 104 Pac. 1049.

For further authorities confirming this view see 91 Am. St. Rep. 192, 21 Ann. Cas. 179, 32 Ann. Cas. 281, and *Briggs* v. *Briggs,* 80 Cal. 253, 22 Pac. 334.

[82 Mont. 239.]

The general rule is that the husband has the right to choose the place of residence of his family and that it is the duty of the wife to conform thereto and live with him in the home so selected, unless there is good reason for refusal to do so, and that her failure to do so is desertion authorizing divorce.   (See *Buell* v. *Buell*, 42 Wash. 277, 84 Pac. 821; *Hunt* v. *Hunt*, 29 N. J. Eq. 96; *Hardenbergh* v. *Hardenbergh*, 14 Cal. 654; *Kennedy* v. *Kennedy*, 87 Ill. 250; *Beck* v. *Beck*, 163 Pa. St. 649, 30 Atl. 236; *Boyce* v. *Boyce*, 23 N. J. Eq. 337.)

Permanent allowance can be made to the wife only when the decree is in her favor.   (19 C. J., p. 243, par. 567.)   It is the uniform rule that in those cases in which a divorce is granted on account of the offense of the wife the court is not authorized to make an order requiring the husband to make a suitable allowance for her future support.   (*Ex parte Spencer*, 83 Cal. 460, 17 Am. St. Rep. 666, 23 Pac. 395; *Parker* v. *Parker*, 55 Cal. App. 458, 203 Pac. 420.)

The following cases hold that where a wife refuses to take up her residence with the husband the law, "for obvious reasons," does not require the husband to support his wife so long as she refuses, without good cause, to live with him: *Roby* v. *Roby*, 10 Idaho, 139, 77 Pac. 213, 215; *Page* v. *Page*, 51 Mich. 88, 16 N. W. 245; *Hardenbergh* v. *Hardenbergh*, supra; *Schuman* v. *Schuman*, 93 Mo. App. 99; *Hagle* v. *Hagle*, 74 Cal. 608, 16 Pac. 518; *Beck* v. *Beck*, supra.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Goldie E. Damm commenced divorce proceedings against her husband, John Damm, Jr., in the fall of 1926, on the grounds of desertion and nonsupport; she asked for alimony, temporary and permanent, attorney's fees and suit money, and for the custody of their minor child, George, then five years of age.   Defendant, by answer and cross-complaint, denied the allegations of the complaint filed and charged plaintiff with desertion; he

prayed for a decree of divorce and for the custody of the child, alleging that plaintiff was not a fit person to care for the boy.

Issue being joined, a trial was had, and, after hearing the evidence, the court made findings in favor of defendant and against plaintiff on all issues presented and thereon entered a decree in favor of defendant, awarding him the custody of the child with the mere right of visitation in plaintiff. Plaintiff moved for a new trial, which motion was denied, whereupon she appealed from the judgment. Her specifications of error raise but the questions hereinafter discussed.

The record discloses that the parties hereto were married in 1919, plaintiff having been twice married theretofore and having two daughters who lived with the couple. Defendant, at the time of his marriage, owned a 320-acre ranch in Custer county, twenty-five miles from Miles City, and thereafter filed upon an additional homestead, which, however, reverted to the government prior to the commencement of the divorce action. Up to the spring of 1923 the family lived on the ranch part of the time and part of the time in Miles City, while plaintiff's parents lived on a ranch near that of defendant. In the spring of 1923 the family went to Portland, Oregon, where plaintiff's two married sisters resided, her father and mother having preceded them. They rented a house and the old couple lived with them; defendant performed various kinds of manual labor for the support of the enlarged family, but his earnings did not suffice, and a part of the time plaintiff was also compelled to secure work. In the spring of 1925 plaintiff's father returned to Montana, and in August following, defendant and plaintiff's mother came back to the state and brought the boy, George, with them. Plaintiff and defendant did not thereafter correspond, and in January, 1926, defendant commenced an action for divorce on the ground of adultery. Defendant returned to Montana on being served with process, secured possession of

[82 Mont. 239.]

the child, and, by answer and cross-complaint, denied the charge against her and prayed for a decree of divorce on the ground of desertion, and for custody of the child.

This first proceeding came on regularly for trial, and thereupon the defendant here, then the plaintiff, introduced in evidence depositions of a number of residents of Portland, reciting facts concerning the conduct of Mrs. Damm in that city. The facts thus shown in evidence did not reflect upon the charge of either adultery or desertion, but tended to show neglect of the child by the mother and to reflect upon her fitness to have the custody of the child. At the close of that trial the court refused to grant a decree to either party and later took the child from the custody of the mother and placed it in the care of strangers.

1. During the trial of the action which resulted in the [1] judgment from which this appeal is taken, after defendant had shown that none of the parties whose depositions had been taken on the former trial were within the jurisdiction of the court, the court permitted those depositions to be read in evidence over the objection of plaintiff; this action plaintiff now asserts constituted reversible error.

Herein an issue was raised as to the fitness of the plaintiff, at the time of the trial, to have custody of the child; the depositions were offered solely on that issue. The parties are identical with those in the former action, and it appears from the depositions that the plaintiff here had the opportunity to, and did, cross-examine the deponents at length. While the facts stated by deponents had to do with a time approximately two years prior to the trial, that fact, if it militates against the testimony at all, affects its weight rather than its admissibility, and, under the conditions shown, the depositions were admissible under the rules laid down in sections 10531 and 10654, Revised Codes of 1921 (*O'Meara* v. *McDermott*, 40 Mont. 38, 104 Pac. 1049; *In re Colbert's Estate*, 51 Mont. 455, 153 Pac. [2] 1022), as admissibility of such depositions is not de-

[82 Mont. 239.]

pendent upon exact identity of parties and causes of action, but rather upon the identity of the question being investigated and the opportunity of the party against whom the deposition is offered to cross-examine. (18 C. J. 750; *In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

2. The establishment of the allegation of desertion by the [3, 4] one or the other of the parties depended upon proof of what took place between them at the time the defendant left Portland. Plaintiff's testimony tended to prove that the family had made its home in Portland, and defendant returned to Montana only for the purpose of making final proof on his additional homestead and was to return to Portland and the plaintiff as soon as that was done. On the other hand, defendant's testimony tended to prove that the family went to Portland only on a visit, which was unduly extended, and that at the time in question he was returning home with no intention of returning to Portland; that he requested plaintiff to accompany him but that she refused, stating that she would never again live in "that destitute hole" (whether she referred to Montana, Miles City, or the Damm ranch we are not informed, other than by defendant's statement that she meant Miles City); that plaintiff had taken another house than that occupied by the family; and that defendant told her that "it looked like her home was broken up" and he was going to take the boy with him, to which she replied, "I guess I will have to let you take him."

Counsel for plaintiff concedes that, as the testimony on the question of desertion was in sharp conflict, we cannot disturb the court's finding of fact in favor of the defendant's version of what took place, but contends that the facts so found are not sufficient to support the conclusion and judgment of desertion. Again, conceding that a husband has the right to choose the place of residence, counsel still insists that the family residence was in Portland, and that, in order to put the plaintiff

in the wrong, it was necessary that defendant first establish a home in Montana and then request plaintiff to come to him, furnishing her with the means to do so. This contention cannot be maintained, as, under the facts found on the testimony of the defendant, he already had a family home on the ranch to which he was but returning and which had been kept up by his brother. There was no attempt made to show that that home was not a fit place in which to live or that plaintiff refused to accompany defendant by reason of his lack of funds to pay for her transportation. She refused to accompany him to the family home for the reason that she would never again live in "that destitute hole." Such refusal constituted desertion as effectively as though she had walked out of the home declaring that she would never return. (Sec. 5745, Rev. Codes 1921.) Plaintiff having thus deserted defendant, it was her duty, not his, to attempt to effect a reconciliation and to cure the desertion by an offer in good faith, to return. (Sec. 5744, Rev. Codes 1921.)

The findings of the court, based upon the testimony referred to, are sufficient to support the judgment.

3. As in most divorce cases where there are children, the chief [5] concern of the parties, as well as the most difficult question for the court's determination, was as to the disposition to be made of the child. In determining this matter the welfare of the child is of paramount consideration (*Kane* v. *Kane,* 53 Mont. 519, 165 Pac. 457), and of necessity the matter must be left largely to the sound discretion of the trial court, having the parties before it and being thus enabled, not only to weigh the evidence adduced for or against either of the parents, but to judge from their appearance and manner of testifying which of them is best fitted to care for and educate the child; the influence and probable surroundings of which will be most apt to give the child the better opportunities in life and best serve its best interests; and it is only on a showing of manifest abuse

of such discretion that the award made by the trial court will be disturbed. (*Boles* v. *Boles*, 60 Mont. 411, 199 Pac. 912.)

Evidence was adduced at the trial which tended to show that [6] the plaintiff neglected the boy, not only while living in Portland, but after returning to Montana and securing possession of him, and that her habits were such as would not surround him with proper environment and companions. It was made to appear that long before defendant left Portland, plaintiff had practically deserted the family residence and abandoned the boy to the insufficient guardianship of her aged mother, having rented a place known as 209 Montgomery Street, where she contends she was running a dressmaking establishment, assisted by a sister, which business required her often to work "night and day." Defendant testified that during a period of three months she was home but about twelve nights; that he at one time threatened to go to the place to see what she "had there," to which she replied that if he ever came to the place he would go out "feet first." After defendant left Portland this place was raided by federal, state and city officers. It was found to consist of a sitting-room, a kitchen and two bedrooms, with a basement beneath. The officers found numerous empty bottles and serving glasses containing dregs of liquor in the kitchen, and in the basement two dozen bottles of home-brew on ice and eighty more in stock. On being arrested, defendant admitted ownership, gave her name as Rose Campbell, and pleaded guilty to possession.

After returning to Montana, plaintiff wrote her sister, in whose possession she left the dressmaking establishment, chiding her for not paying the rent as agreed and reminding her that she left her "a lot of customers" and "three pints" from which she should have been able to make the rent, or $35.

Considering this testimony and the palpable insincerity and untruth of plaintiff's attempted explanation thereof, with other damaging testimony which might well be believed, and the unfavorable impression which the plaintiff must have made

upon the trial judge, we cannot say that there was a manifest abuse of the discretion lodged in the trial court in determining the delicate question of award of custody of children in these distressing cases wherein, while still retaining parental love and affection, parents can no longer maintain the marital relations.

4. Counsel for plaintiff, without the citation of authority, [7] asserts that, although it may be found that the evidence is sufficient to support the decree in favor of defendant, the court should have awarded the plaintiff a "portion of defendant's property." There is no claim that plaintiff had any interest in defendant's property, and the only award of property sought by the complaint is permanent alimony.

Section 5771, Revised Codes 1921, provides for an award of alimony to the wife when she is granted a divorce "for an offense of the husband," but in the absence of legislation permitting it, the trial court is without authority to compel a husband, to whom a divorce has been granted for an offense of the wife, to make provision for her support. (*Bischoff* v. *Bischoff,* 70 Mont. 503, 226 Pac. 508.) As we have no statute providing for such an award, no error was committed in failing to award alimony to the unsuccessful wife.

5. The remaining assignments of error are based upon the court's failure to grant plaintiff a decree on either of the grounds stated in her complaint.

As to the charge of desertion, the court found against plaintiff, as above shown. While the record shows that defendant failed for more than a year prior to the commencement of the action to provide for the support of plaintiff, the findings of the court to the effect that plaintiff was guilty of desertion [8] during that period also bar a recovery on this ground, as a husband is not required to support a wife while she lives separate and apart from him against his will and without his consent and refuses to follow him to his chosen place of resi-

dence. (*Roby* v. *Roby*, 10 Idaho, 139, 77 Pac. 213; *Hagle* v. *Hagle*, 74 Cal. 608, 16 Pac. 518.)

No reversible error appearing in the record, the judgment must be affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.