(No. 6724. April 26, 1940.)

A. E. STILWELL, Respondent, v. ABERDEEN–SPRING-
FIELD CANAL COMPANY, Employer, and STATE
INSURANCE FUND, Surety, Appellants.

[102 Pac. (2d) 296.]

Clarence L. Hillman, for Appellants.

A. E. Stilwell, *in pro. per.*, filed no brief.

BUDGE, J.—Respondent was employed by the Aberdeen-Springfield Canal Company operating a drag-line which was equipped with an enclosed cab with a window in the front and side. On Thursday, November 4th, respondent commenced work at 7 o'clock in the morning, operated the drag-line about thirty minutes and then stopped to permit the oiler

to oil the machine. The windows in the front of the cab were so hinged that the top portion could be unlatched, swung down and outward over the bottom half and the whole swung around. This operation was performed and the oiler oiled the levers in the cab from the outside through the opened window. Respondent then attempted to close the window and in so doing the strong wind blowing "fetched it over so fast it broke a window light out right in front of where" respondent was working. The cab and operator faced west into the strong wind which was blowing. Approximately an hour and one-half elapsed before the window was partially closed by a piece of wet cardboard. During this time respondent operated the drag-line facing the cold strong wind and developed a headache therefrom, but continued to work. The following day respondent felt "plenty of pain" but continued to work that day and Saturday and on Sunday discovered he had double vision, but found that by closing one eye the condition was corrected. Respondent secured a pair of glasses and taped one glass covering the eye and continued work until November 27th at which time operations ceased. Respondent then sought treatment from Dr. E. H. Elmore, a physician of 23 years practice, specializing in eye, ear, nose and throat work, who made an examination and was given the history above related. Upon the hearing Dr. Elmore testified he found respondent "had a dyplopia or double vision" and gave as his opinion "that the cause of the trouble was due to an inflammation of part of the optic nerve," and "In my opinion in this case it was due to the exposure to the cold . . . . from the wind coming from this window when the glass was broken." Dr. Cowles, another eye, ear, nose and throat specialist, who examined respondent on or about December 30, 1938, expressed his opinion as: "I don't believe" the exposure was the cause of respondent's condition, and further stated "I cannot say it is not possible."

Following the hearing the board made and entered its findings of fact, rulings of law and an order and award in favor of respondent, finding in part:

"That the inflammation of claimant's said left eye was the result of his exposure to the severe wind blowing in

through the broken glass window on November 4th and was a personal injury by accident arising out of and in the course of claimant's employment with the defendant Aberdeen-Springfield Canal Company.''

Claimant was not disabled for work but spent the sum of $35 for medical attention and the board entered an award in favor of respondent for such amount, from which award this appeal was taken.

From the facts appearing in the record and heretofore referred to it appears there was positive evidence that respondent's condition was the result of his exposure to the severe wind blowing in through the broken glass. On the other hand there is the testimony of the second specialist who stated he did not believe the wind to be the cause of respondent's condition, but who likewise stated he could not say it was not possible. In *Riley v. City of Boise,* 54 Ida. 335, 31 Pac. (2d) 968, the rule stated in *Adams v. Bunker Hill etc. Min. Co.* (on rehearing), 12 Ida. 637, 89 Pac. 624, 628, 11 L. R. A., N. S., 844, is quoted by this court, that the possibility, or even probability of another cause for damage than that alleged does not defeat recovery where plaintiff presents sufficient facts to justify a reasonable juror in concluding that the thing charged was the prime and moving cause. We are of the opinion there was sufficient competent evidence to support the board's finding that respondent's injury resulted from his exposure to the severe wind blowing in through the broken glass window on November 4th, during his tour of duty operating the drag-line.

Appellants' main contention is that the injury for which respondent received an award was not an accident arising out of and in the course of his employment, for the reason that the risk was common to the public. Appellants state the proposition as follows:

''Appellants take the position in this case that the respondent did not suffer a personal injury by accident arising out of and in the course of his employment. Assuming that the eye disease, *dyplopia,* resulted from exposure to a cold wind, the hazard was no different than that confronting others in the locality; he merely suffered from an act of God, which is not compensable.''

To carry such argument to its logical conclusion would mean that practically any accident could be said to be not compensable for the reason that the hazard was no different than that confronting others in the locality. This court has not subscribed to such a doctrine. In *Zeier v. Boise Transfer Co.*, 43 Ida. 549, 254 Pac. 209, wherein it was urged the injury which caused Zeier's death did not arise out of and in the course of his employment because the risk was common to all the public, it was said:

"Where the employment requires the employee to be on the street he is subjected to a different risk than the ordinary traveler and so if he is injured while engaged in that duty or something incidental to it the accident arises out of the employment. This doctrine is well stated in Reugg's Workmen's Compensation, 9th ed., page 91, quoting from *Dennis v. White*, 10 B. W. C. C. 280; . . . . 'Where exposure to ordinary street risks is inherent in the nature of the employment or where the particular work being performed compels the employee to face such hazard in the course of his contract of employment, and they thus become connected with and incidental to the employment and are the direct cause of an accident, the accident arises out of, as well as in the course of, the employment, within the Workmen's Compensation Act.' "

In *Riley v. City of Boise, supra*, wherein it was urged that injury sustained by the freezing of a patrolman's feet was not compensable, and wherein it was held that injury by freezing is "accidental injury" within the Workmen's Compensation Act, *Nikkiczuck v. McArthur*, 9 Alberta, L. R. 503, 28 D. L. R. 279, is quoted with approval as follows:

" 'Simply because you can discover or describe a class of workmen who are generally exposed to such a risk, and find the applicant to be one of that class, seems to me to be no valid reason for refusing him compensation, or for saying that his injury did not arise out of his employment. People who are not employed at all do not kick around in the snow when it is 60 below zero. People who are employed as waiters in a comfortable hotel are not exposed to frostbite. Neither are judges, for example, nor lawyers, nor railway superin-

tendents. It was because he was so employed that the applicant was exposed to the risk, and I see no reason for excluding his case from the words of the statute because you can discover other people whose employment similarly exposed them. Upon that principle no man could recover if you could show that a group of other people were exposed in the course of their employment to similar risks. The man would have to be a rara avis indeed, on such a doctrine, before he could succeed.' "

See, also, *Columbine Laundry Co. v. Industrial Com.*, 73 Colo. 397, 215 Pac. 870; *Chandler v. Industrial Com.*, 53 Utah, 213, 184 Pac. 1020, 8 A. L. R. 930, and annotation, page 935.

The rule which this court has in effect announced appears to be that when one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, such accident arises out of and in the course of his employment although any other person at such place would have met with such accident, irrespective of employment. (*Aetna Life Ins. Co. v. Industrial Com.*, 81 Colo. 233, 254 Pac. 995.) In the instant case claimant was given a place to work protected from the elements. When that protection was removed by the breaking of the glass from the window respondent continued to perform the duties required by his employment and injury resulted from the exposure to the elements. Such accident, that is the effect produced by the strong cold wind blowing through the broken window, arose out of and in the course of respondent's employment. The award of the Industrial Accident Board should be and is hereby affirmed.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.